1  MICHAEL R. MENSSEN (SB #273388)
   michael.menssen@stoel.com
2  STOEL RIVES LLP
   201 S Main Street, Suite 1100
3  Salt Lake City, UT  84111
   Telephone:  801.328.3131
4  Facsimile:  801.578.6999

5  *Attorneys for Defendant Teleserve, LLC*

6
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  YTEL, INC., | Case No. 8:16-cv-00947-JLS-FFM |
| 11           Plaintiff, | DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| 12      v. | |
| 13  TELESERV, LLC, a Utah Limited Liability Company, and DOES 2 through 10 inclusive, | |
| 14 | |
| 15           Defendant. | [Statement of Uncontroverted Facts and Conclusions of Law; and proposed Order Filed Concurrently herewith] |
| 16 | |
| 17 | Date:     April 21, 2017 |
| 18 | Time:     2:30 p.m. |
|    | Judge:    Josephine L. Staton |

19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 21, 2017, at 2:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Josephine L. Staton in Courtroom 10A of the United States District Court for the Central District of California, located at 411 W. Fourth St., Santa Ana, CA, 92701, Teleserve, LLC ("Teleserve") will and hereby does move this Court for an order granting partial summary judgment that the most Plaintiff Ytel, Inc ("Ytel") is entitled to collect under the terms of the applicable contract is $32,072.50 and that Teleserve should be considered the prevailing party under California Civil Code section 1717.

This Motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure on the following grounds.

(1) The Agreement between the parties required Ytel to provide invoices to Teleserve before any payment was due. Ytel only provided invoices to Teleserve in the amount of $32,072.50. Ytel has thus failed to perform its obligations under the Agreement for the amount of damages sought of $189,572.50, has failed to perform a condition precedent by not providing Teleserve with invoices, and Teleserve has not breached the terms of the Agreement by failing to pay $189,572.50.

(2) California Civil Code provides that if a defendant alleges in his answer that he has tendered to the plaintiff the full amount to which the plaintiff is entitled, and that allegation is found to be true, the defendant is deemed to be the prevailing party on the contract. Teleserve has previously tendered the amount of $32,072.50 to Ytel. If the court finds that $32,072.50 is the most that Ytel is entitled to, Teleserve should be considered the prevailing party under Civil Code section 1717.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 1, 2017.

This Motion is based on this Notice of Motion and Motion for Partial Summary Judgment, the accompanying Memorandum of Points and Authorities,

the concurrently filed proposed Statement of Uncontroverted Facts and Conclusions of Law, the evidence attached thereto, the records on file in this action, and any further argument or evidence that may be presented at or before the hearing of this motion.

Dated: February 24, 2017

STOEL RIVES LLP

*/s/ Michael R. Menssen*
Michael R. Menssen
Attorney for Defendant

STOEL RIVES LLP
ATTORNEYS AT LAW
SALT LAKE CITY

MOTION FOR PARTIAL SUMMARY JUDGMENT

-2-

8:16-CV-00947-JLS-FFM

91021424.1 0057536-00003

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a breach of contract case. In September 2014, Teleserve signed a contract with Ytel to receive call center services for the purpose of conducting telephone polling for political campaigns (the "Agreement"). After election day, Teleserve informed Ytel that it no longer needed its services and discussed with Ytel the termination of the Agreement. Teleserve believed that Ytel terminated the Agreement at this time, as the last invoice it received was on December 2, 2014 and Ytel terminated all access to its services on December 8, 2014. Teleserve had no reason to believe that it had any further obligations under the Agreement. More than one year later, Ytel filed this lawsuit, alleging that Teleserve owes it $189,572.50 under the theory that Teleserve agreed to a 12-month minimum term with monthly minimum payments of $15,750.

While Teleserve disagrees with many of Ytel's interpretation of the Agreement and its claims in this case (including the existence of a monthly minimum), this Motion is limited to one central and fatal flaw of Ytel's case: Ytel failed to perform its obligations under the Agreement and thus cannot meet the elements required for breach of contract. The Agreement required Ytel to send Teleserve invoices before Teleserve was required to make any payments. Ytel failed to do so. Ytel's failure prevents it from establishing two of the elements necessary for a breach of contract claim: plaintiff's performance and defendant's breach. Specifically, Ytel never sent invoices for the amount of $189,572.50, and under the terms of the Agreement, the sending of invoices was a condition precedent for Teleserve's duty to make payments. Because Ytel did not send Teleserve invoices for the amount of $189,572.50, Teleserve did not breach the contract in that amount.

Ytel cannot ignore its contractual obligations to send invoices and then use this Court to collect on amounts it never billed. The most Ytel can recover is the amount it actually sent invoices for: $32,072.50—which amount Teleserve has already previously tendered to Ytel. Teleserve's Motion for Partial Summary Judgment should be granted.

## II.  FACTUAL BACKGROUND AND UNDISPUTED FACTS

**Relationship between Teleserve and Ytel**

Teleserve and Ytel entered into a contract on September 25, 2014 for Ytel to provide call center services to Teleserve. (Statement of Uncontroverted Facts and Conclusions of Law ["Fact"], No. 1.) During the negotiations of the Agreement, Jeremy Whitney, the Vice President of Operations for Teleserve, told Ytel's representative that Teleserve needed Ytel's call center services for help conducting telephone polling for a political campaign during the 2014 election season. (Fact No. 9.)

On November 2, 2014, Ytel sent Teleserve a statement for the amount of $15,625, which included new charges of $17,875, and recognized a payment received of $2,250.[1] (Fact No. 10.) Teleserve's polling campaigns ended the next day, as it was the day before the election, Monday, November 3, 2014. (Fact No. 11.) Teleserve never used Ytel's services again. (Fact No. 11.) After election day, Jeremy Whitney informed Ytel that Teleserve would no longer need Ytel's services and discussed with Ytel the termination of the Agreement. (Fact No. 12.) Ytel sent a final statement to Teleserve on December 2, 2014 with new charges of $16,447.50. (Fact No. 13.) As Teleserve had not yet paid the amount from the November statement, the total amount of the December statement was $32,072.50. (Fact. No. 15.) Ytel never sent Teleserve any further invoices or statements, and

---

[1] Ytel appears to treat statements and invoices as the same thing. *See* Dep. of Jonathan Ryan at 27:17-19 ("Q: Are there differences between statements and invoices? A: We only have pretty much statements.")

Ytel terminated Teleserve's access to Ytel's services on December 8, 2014. (Fact Nos. 16 & 18.)

Ytel filed this lawsuit on April 13, 2016 seeking damages of $189,572.50. Teleserve tendered the amount of $32,072.50 that had been invoiced to it, taking the position that this is the maximum amount to which Ytel could be entitled, but Ytel did not accept. (Fact No. 20.)

**The Terms of the Agreement**

The Agreement requires that Teleserve "*shall be billed* for the Services in the amounts, and as per the schedule, set forth in this Order Form." (Fact No. 2.) Once Teleserve received an invoice from Ytel, the Agreement required Teleserve to make payments "within four (4) days of receiving each invoice." (Fact No. 5.) The Agreement also contained a provision for Teleserve to request a billing adjustments. Under this provision, Teleserve had to make any requests for a billing adjustment within seven days of receiving the invoice, or the amount billed would be considered final, valid, and binding. (Fact No. 6.)

The Agreement stated it "shall be effective on the Start Date and continue for an initial term of twelve (12) months." (Fact No. 3.) Notwithstanding this twelve month term, the Agreement gave Ytel the right to terminate the Agreement at any time for numerous reasons, including for "non-payment on any past due amounts." (Fact No. 4.) In the event of termination of the Agreement, Ytel did not need to provide Teleserve with any writing or notice, but to receive payment the Agreement provided that Ytel must send Teleserve an invoice, stating that "[Teleserve] shall pay to [Ytel], immediately upon receipt of any applicable invoice, any and all amounts due to Company under the Agreement." (Fact Nos. 4 & 7.)

The Agreement also contains an attorneys' fees provision, which states that "if any action at law or in equity . . . is brought to enforce or interpret the provisions of the Agreement, the prevailing party will be entitled to reasonable attorneys' fees . . . ." (Fact. No. 8.)

## III. ARGUMENT

### A. Standard for Motion for Summary Judgment.

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e). Furthermore, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. *See In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## B. Teleserve Is Entitled to Partial Summary Judgment Because Ytel Cannot Meet the Elements for Breach of Contract.

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010).[2] Here, Ytel cannot satisfy the second or third element.

### 1. Ytel did not perform its obligations under the Agreement.

First, Ytel cannot establish the second element because it did not perform its obligations under the Agreement that would entitle it to recover the amount claimed. The Agreement states, "[Teleserve] *shall be billed* for the Services in the amounts, and as per the schedule, set forth in this Order Form." (Fact No. 2.) The "shall" language indicates that this is a mandatory requirement for Ytel under the Agreement. *See Segal v. Silberstein*, 156 Cal. App. 4th 627, 634 (2007) ("the term "shall" has long been considered mandatory under California's contract interpretation rules."). Yet Ytel did not send Teleserve invoices for the amount of $189,572.50. Instead, Ytel only sent Teleserve invoices for the total amount of $32,072.50. (Fact Nos. 15-16.) Ytel failed to perform a mandatory obligation under the contract. As a result, it cannot satisfy the second element for a breach of contract claim, and $32,072.50 is the most Ytel can recover.

Ytel also cannot offer any excuse for this nonperformance. In fact, Ytel has not even alleged an excuse for nonperformance in the Complaint, nor are there any facts to support a claim for nonperformance. As such, having failed to perform, and without an excuse for that nonperformance, Ytel cannot establish the second element of its claim. *Abdelhamid,* 182 Cal. App. 4th at 999.

---

[2] The Agreement states that California law applies. (Exhibit A to Ytel's Complaint, Dkt. No. 1-1 at pages 22 (A15), attached hereto as Ex. A.)

### 2. Teleserve did not breach any duties under the Agreement.

Second, Ytel cannot establish the third element for its claim because Teleserve did not breach the Agreement in the amount Ytel claims. Teleserve's duty to make payments under the Agreement were not triggered until it received an invoice from Ytel, at which point it had four days to make a payment. (Fact No. 5.) Ytel's duty to provide an invoice to Teleserve is thus a condition precedent, and it must be performed before Teleserve has its own duty to perform. *See, e.g, Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993) (a condition precedent is an act that must be performed "before the contractual right accrues or the contractual duty arises"); *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 592 (2016) ("Where one party's obligation is dependent on the prior proper performance of the other party, and that other party does not perform, the obligation is excused.").

Since the condition precedent of sending invoices for $189,572.50 did not occur, Teleserve had no duty to pay that amount under the Agreement. Teleserve, therefore, did not breach the contract and Ytel cannot prevail on its claim. *See, e.g, Alki Partners, LP*, 4 Cal. App. 5th at 592 ("A party's failure to perform a condition precedent will preclude an action for breach of contract.").

That the requirement to send an invoice is a condition precedent is demonstrated by its place in the Agreement, as other contractual terms are expressly triggered by the receipt of an invoice. For example, the Agreement contains a provision that allowed Teleserve to make requests for billing adjustments, and these requests must be made within seven days of receiving the invoice. (Fact No. 6.) Only after this seven day period had expired would an invoice be considered "final, valid and binding." (*Id.*) If Teleserve did not receive an invoice, it would be unable to exercise its contractual right to request a billing adjustment, and a charge could never be considered final. Further, under the Agreement, Teleserve was required to make payments within four days "of receiving each invoice" from Ytel.

(Fact No. 5.) Without receiving an invoice, this obligation was not triggered, and Teleserve would have no reason to believe it had an obligation to make a payment. Receiving an invoice is therefore an essential part of the Agreement, and it was a condition precedent for Teleserve's duty to make payments.

A further reason for requiring an invoice to be a condition under the Agreement before a duty to pay is triggered is highlighted by the apparent termination of the Agreement in December 2014. Following the election and the end of Teleserve's polling campaign, Teleserve discussed terminating the Agreement with Ytel. (Fact No. 12.) Under the Agreement, Ytel had the unilateral right to terminate the Agreement within the first twelve months, and it was not required to confirm the termination in writing. (Fact No. 4.) The Agreement did require, however, that upon termination, Teleserve "shall pay to [Ytel], *immediately upon receipt of any applicable invoice*, any and all amounts due." (Fact No. 7.) Thus, the only method the Agreement contained to allow Teleserve to know whether the Agreement was terminated was the receipt of invoices. If Ytel continued to send invoices, Teleserve would know that Ytel had not terminated the Agreement. If Ytel stopped sending invoices—as they did after December 2, 2014 (Fact No. 16)—Teleserve was justified to take that as confirmation that Ytel had terminated the Agreement. Thus, invoices played a crucial role in informing Teleserve whether the Agreement was still in place and whether Teleserve had any duty to pay, as Ytel had a unilateral right to terminate without any obligation to inform Teleserve in writing. Ytel's duty to send invoices cannot be excused.

Because Ytel failed to perform an essential obligation under the contract by failing to provide invoices to Teleserve, and since that obligation was a condition precedent for Teleserve's duty to pay, Ytel cannot establish two of the elements for a breach of contract in the amount of $189,572.50. The most it can recover is the amount it has actually sent invoices for: $32,072.50—which amount Teleserve had agreed to pay prior to the litigation and previously tendered to Ytel. (Fact No. 20.)

### C. If Partial Summary Judgment is Granted for Teleserve, It Should Be Considered the Prevailing Party Under California Civil Code Section 1717.

If the Court limits Ytel's recovery to $32,072.50, Teleserve should be considered the prevailing party in this action. The Agreement contains an attorneys' fees provision which states that "if any action at law or in equity . . . is brought to enforce or interpret the provisions of the Agreement, the prevailing party will be entitled to reasonable attorneys' fees . . . ." (Fact No. 8.)

The issue of which party is considered the "prevailing party" is addressed by California Civil Code section 1717, subdivision (b)(2), which states:

> Where the defendant alleges in his or her answer that he or she tendered to the plaintiff the full amount to which he or she was entitled, and thereupon deposits in court for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a party prevailing on the contract within the meaning of this section.[3]

Teleserve falls under this statute. Teleserve included in its answer the allegation that it tendered the amount of $32,072.50 to Ytel and that this amount is the maximum amount to which Ytel is entitled. (Fact No. 19.) Ytel admits that Teleserve tendered this amount. (Fact No. 20.) Thus, if the Court finds that Ytel is only entitled to recover the amount it submitted in invoices—$32,072.50—then the Court should also recognize Teleserve as the prevailing party under Civil Code section 1717.

## IV. CONCLUSION

For the reasons set forth above, the Court should find that Ytel's failure to send any invoices for the amount of $189,572.50 means that it failed to perform its obligations under the Agreement that would entitle it to $189,572.50, that Teleserve did not have a duty to pay an amount for which it did not receive an invoice, and

---

[3] Teleserve will satisfy the requirement to deposit this amount in court shortly.

1  that Ytel's recovery is limited to the amount it actually invoiced to Teleserve of
2  $32,072.50.  In addition, the Court should find that Teleserve is the prevailing party
3  under Civil Code Section 1717.

5  Dated:  February 24, 2016              STOEL RIVES LLP

7                                          */s/ Michael R. Menssen*
                                          Michael R. Menssen
8                                          Attorney for Defendant

# CERTIFICATE OF SERVICE

On the 24th day of February, 2017, I hereby certify that I caused to be served a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** by EM/ECF electronic filing upon the following:

Alan L. Brodkin
ALAN L. BRODKIN & ASSOCIATES
15500 B Rockfield Boulevard
Irvine, CA  92618

/s/ Rose Gledhill